1                    IN THE UNITED STATES DISTRICT COURT
                        MIDDLE DISTRICT OF FLORIDA
2                            TAMPA DIVISION


3

        UNITED STATES OF AMERICA,      :
4                                      :
              Plaintiff,               :
5                                      :
                                       : CASE    8:14-cr-462-T-30
6       vs.                            : NO.:    AEP
                                       :
7                                      : DATE:   03/19/2015
        CARLOS JONATHAN QUIJIJ         :
8       FRANCO,                        : TIME:   2:14 p.m.
                                       :
9             Defendant.               : PAGES:  1 - 38
        ------------------------       :
10

11            TRANSCRIPT OF GUILTY PLEA PROCEEDINGS
            BEFORE THE HONORABLE ANTHONY E. PORCELLI
12              UNITED STATES MAGISTRATE JUDGE

13

        For the Plaintiff:
14
                CHRISTOPHER F. MURRAY, ESQ.
15              United States Attorney's Office
                Suite 3200
16              400 N. Tampa Street
                Tampa, Florida 33602
17
        For the Defendant:
18
                JEFFREY G. BROWN, ESQ.
19              Brown & Doherty, PA
                Suite 120
20              450 Carillon Parkway
                St. Petersburg, Florida 33716
21

22      Court Reporter:  Lynann Nicely, RPR, RMR, CRR
                Official Court Reporter
23              801 N. Florida Avenue, 13B
                Tampa, Florida 33602
24

        REPORTER'S NOTE:  Defendants testified via Spanish
25      Interpreter.

1                P R O C E E D I N G S

2          THE COURT:  Let's call the case for the

3    record.

4          COURTROOM DEPUTY CLERK:  United States vs.

5    Franco, United States vs. Zamora, Case

6    8:14-cr-462-T-30AEP.

7          THE COURT:  Have counsel state their

8    appearance for the record.

9          MR. MURRAY:  Chris Murray for the United

10   States, Your Honor, good afternoon.

11         THE COURT:  Thank you, Mr. Murray.

12         MR. BRITT:  Good afternoon.  Charlie Britt on

13   behalf of Mr. Giezi Magno Zamora.

14         MR. BROWN:  Jeff Brown on behalf of Carlos

15   Franco.

16         THE COURT:  Thank you, Mr. Brown.

17         Good afternoon, gentlemen.  Gentlemen, it's my

18   understanding that you both want to plead guilty in

19   your case.  The purpose of this hearing is so that I

20   can conduct an inquiry into your decision to insure

21   that your decision is being done both knowingly and

22   voluntarily.  Therefore during the hearing I will

23   have a number of questions for each of you as well

24   as some questions for your attorneys and the

25   prosecutor.

1          It's vital that you understand everything that

2     we are going to discuss.  If at any point you do not

3     understand something, I want you to feel free to

4     interrupt me so I can explain it to you further.

5          Mr. Zamora, it's my understanding, sir, that

6     you are pleading guilty pursuant to a written plea

7     agreement.  Is that correct?

8          MR. ZAMORA:  Yes, Your Honor.

9          THE COURT:  Gentlemen, during the hearing I'll

10    have questions for both of you and when I do,

11    Mr. Zamora, I will ask that you respond first and

12    Mr. Franco that you wait for Mr. Zamora to answer

13    and then you answer after he's completed his answer.

14         Let me explain to both of you that if at any

15    time during the hearing you need to consult with

16    your attorney -- so Mr. Zamora if you need to

17    discuss anything with Mr. Brown, Mr. Franco if you

18    need to discuss anything with Mr. Brown, you just

19    let me know, I will stop the hearing and give you

20    all the time that you need.

21         Do you each understand that?

22         MR. ZAMORA:  Yes.

23         MR. FRANCO:  Yes.

24         THE COURT:  All right.  Gentlemen, in a moment

25    I'm going to ask my courtroom deputy to place you

1      both under oath.  I tell you that because it's

2      important you understand the consequences of the

3      oath.  If in responding to my questions you should

4      provide any false or misleading answers, you could

5      be charged with additional crimes such as crimes of

6      perjury or obstruction of justice.  Those crime

7      would carry additional penalties beyond any of the

8      penalties you're facing in this case.  Do you

9      understand that?

10          MR. ZAMORA:  Yes.

11          MR. FRANCO:  Yes, sir.

12          THE COURT:  Madam deputy?

13          DEPUTY CLERK:  Raise your right hand.  Do you

14     solemnly swear the testimony you're about to give

15     this court will be the truth, the whole truth and

16     nothing but the truth, so help you God?

17          MR. ZAMORA:  Yes, ma'am.

18          MR. FRANCO:  Yes.

19          DEPUTY CLERK:  Have a seat, please.  I'll ask

20     you to please state your name for the record.

21          MR. ZAMORA:  Giezi Magno Zamora.

22          MR. FRANCO:  Carlos Jonathan Quijij Franco.

23          THE COURT:  All right, gentlemen, let me

24     explain to you that if at the end of this hearing

25     you do decide to enter a plea of guilt and your plea

1    is accepted by the court, it will be very difficult

2    if not impossible for you later to change your mind.

3    Do you each understand that?

4         MR. ZAMORA:  Yes.

5         MR. FRANCO:  Yes, sir.

6         THE COURT:  Mr. Franco, so you know, sir, and

7    I appreciate it that you're nodding your head in

8    response to my answers, but you'll have to answer

9    audibly each time so that there is a record of your

10   response.  Do you understand that, sir?

11        MR. FRANCO:  Yes, sir.

12        THE COURT:  Thank you, sir.  I have to ask you

13   both some questions you may consider to be a little

14   bit personal in nature.  Please understand the only

15   reason why I'm asking these questions is in order to

16   insure that you're competent to enter a plea of

17   guilt and I certainly in no way intend to embarrass

18   you.  Do you understand what I mean by that?

19        MR. ZAMORA:  Yes.

20        MR. FRANCO:  Yes.

21        THE COURT:  How old are you?

22        MR. ZAMORA:  29.

23        MR. FRANCO:  27.

24        THE COURT:  How far did you go in school?

25        MR. ZAMORA:  Tenth grade elementary school.

1          MR. FRANCO:  Elementary school, fifth grade as

2     well.

3          THE COURT:  Is Spanish your primary language?

4          MR. ZAMORA:  Yes.

5          MR. FRANCO:  Yes.

6          THE COURT:  Can you read or write in the

7     Spanish language?

8          MR. ZAMORA:  Yes.

9          MR. FRANCO:  Yes.

10          THE COURT:  The charges against you, were they

11     translated for you in the Spanish language?

12          MR. ZAMORA:  No.

13          MR. FRANCO:  No.

14          THE COURT:  Let me explain that a little bit

15     more.  In other words, what you've been charged with

16     in this case, the indictment, was that ever read to

17     you in the Spanish language?

18          MR. ZAMORA:  Yes.

19          MR. FRANCO:  Yes.

20          THE COURT:  After they were read to you, did

21     you feel that you understood the charges?

22          MR. ZAMORA:  Yes.

23          MR. FRANCO:  Yes, sir.

24          THE COURT:  To your knowledge have you ever

25     suffered from any mental disease or defect of any

1    kind?

2         MR. ZAMORA:  No.

3         MR. FRANCO:  No.

4         THE COURT:  In the past 24 hours have you

5    taken any drugs or medication of any kind?

6         MR. ZAMORA:  No.

7         MR. FRANCO:  No.

8         THE COURT:  Is there anything at all impacting

9    your ability to think clearly?

10        MR. ZAMORA:  No.

11        MR. FRANCO:  No.

12        THE COURT:  Do you understand the purpose of

13   this hearing?

14        MR. ZAMORA:  Yes.

15        MR. FRANCO:  Yes, sir.

16        THE COURT:  All right.  Mr. Britt, any

17   concerns regarding competency in regard to

18   Mr. Zamora?

19        MR. BRITT:  No, Your Honor.

20        THE COURT:  Mr. Brown, as to Mr. Franco?

21        MR. BROWN:  No, Your Honor.

22        THE COURT:  All right.  I want to note for the

23   record based upon Mr. Zamora and Mr. Franco's

24   responses to my questions as well as their demeanor,

25   I do find that they are both fully competent to

1       enter a plea of guilt if they choose to do so.

2           Therefore, gentlemen, I'm going to go forward

3       with your plea hearing, but before I proceed, I want

4       to also inform you you have the right to have your

5       plea before the district judge assigned to your

6       case.  The district judge assigned to your case is

7       Judge Virginia Covington.  I'm the magistrate judge

8       assigned to your case.  Judge Covington's authority

9       is different from my authority.  Judge Covington not

10      only has the authority to hear your plea, but it is

11      Judge Covington who will decide whether to accept

12      your plea and adjudicate you guilty.  If you are

13      adjudicated guilty in the case, it would then be

14      Judge Covington who would impose sentence upon you.

15          If you decided not to enter a plea of guilty

16      but rather take the case to trial, it would be Judge

17      Covington who would preside over that trial.  My

18      authority is limited to just conducting this hearing

19      to determine whether you are entering a plea

20      knowingly and voluntarily.  If I make that

21      determination, I would then issue a report

22      recommending that your plea be accepted.

23          Having stated that, do you feel that you

24      understand the difference in my authority as

25      compared to Judge Covington's authority?

1          MR. ZAMORA:  Yes.

2          MR. FRANCO:  Yes.

3          THE COURT:  Do you understand that you have

4     the right to have your plea before Judge Covington?

5          MR. ZAMORA:  Yes.

6          MR. FRANCO:  Yes.

7          THE COURT:  Do you wish to waive that right

8     and have your plea in front of me today?

9          MR. ZAMORA:  Yes.

10          MR. FRANCO:  Yes.

11          THE COURT:  Has anyone forced you or

12     threatened you in any way in order for you to waive

13     that right?

14          MR. ZAMORA:  No.

15          MR. FRANCO:  No.

16          THE COURT:  Anyone promised you anything of

17     value in order for you to waive that right?

18          MR. ZAMORA:  No.

19          MR. FRANCO:  No.

20          THE COURT:  All right, gentlemen, based upon

21     your waiver, then I do find it appropriate to go

22     forward with your plea.

23          What I'd like to do is to summarize for you

24     each of the charges in the indictment.  Again,

25     Mr. Zamora, the relevant charge for you is Count One

1      since you've agreed to plead guilty to that charge.

2      And Mr. Franco, obviously both charges are relevant

3      to you.

4          Count One alleges, in summary, that beginning

5      on an unknown date and continuing until on or about

6      September 11th of 2014, each of you who were first

7      brought into the United States at a point in the

8      Middle District of Florida did knowingly and

9      willfully conspire and agree with each other and

10     other persons, known and unknown, to possess with

11     intent to distribute 5 kilograms or more of cocaine.

12     This is alleged to be in violation of Title 46,

13     United States Code, Sections 7503(a), 7506(a) and

14     (b).

15         Mr. Franco, as to Count Two alleges in summary

16     that on or about September 11th of 2014, you after

17     first being brought into the United States at a

18     point in the Middle District of Florida, did

19     knowingly and intentionally while aiding and

20     abetting other persons both known and unknown to

21     include your codefendants that you did possess with

22     intent to distribute 5 kilograms or more of cocaine

23     while on board a vessel subject to the jurisdiction

24     of the United States.  This is alleged to be in

25     violation of Title 46, United States Code, Sections

1    7503(a) and 7506(a).

2         Gentlemen, I'm going to ask you again, do you

3    understand those charges?

4         MR. ZAMORA:  Yes.

5         MR. FRANCO:  Yes.

6         THE COURT:  Do you feel you've had a full and

7    fair opportunity to review all the facts and

8    evidence regarding those charges in consultation

9    with your attorney?

10        MR. FRANCO:  Yes.

11        MR. ZAMORA:  No, I don't.

12        THE COURT:  All right, Mr. Zamora, explain

13   that to me, do you think you need more time to meet

14   with your attorney in this case?

15        MR. ZAMORA:  Well, because the accusation is

16   for having drugs and that I didn't have any drugs.

17        THE COURT:  All right, Mr. Zamora, then let me

18   ask you, why did you sign the plea agreement?

19        MR. ZAMORA:  Maybe because I didn't understand

20   it very much.

21        THE COURT:  All right, sir.  Mr. Britt, when

22   is this case scheduled for trial?

23        MR. BRITT:  I think we're on Judge Covington's

24   May trial calendar, Your Honor.

25        THE COURT:  All right.  Mr. Britt, unless you

1    want me to inquire further, what I intend to do is

2    give Mr. Zamora some time and maybe you can meet and

3    decide how you want to proceed further.  If you're

4    on the May trial term, that gives you some time.

5         Mr. Zamora, I'm not going to go forward with

6    your plea hearing because based on what you're

7    telling me, it sounds like you're unsure if that's

8    what you want to do.  Am I correct in that

9    assumption?

10         MR. ZAMORA:  Yes.

11         THE COURT:  All right, sir, so I'm going to

12    stop the hearing, allow you to meet with Mr. Britt

13     as much as you can to make your determination.  Let

14    me explain to you, Mr. Zamora, you have the

15    constitutional right to go to trial.  You're not

16    required to enter any plea in this case.  So if you

17    decide you need to go to trial, then you do that,

18    sir.  But for some reason if you decide after

19    meeting further with Mr. Britt that you want to

20    enter a plea, Mr. Britt will just contact my

21    chambers and we'll scheduled another hearing for

22    your plea.

23         But you need to understand, sir, that your

24    case is scheduled for trial in May, so there is not

25    an infinite amount of time for you to make that

1     decision.  Do you understand that, sir?

2          MR. ZAMORA:  Yes.

3          MR. MURRAY:  Let me put on the record, our

4     plea agreement offer will expire at the end of

5     March, so if the plea is not entered by the end of

6     March, we will withdraw our plea agreement offer.

7          THE COURT:  Mr. Zamora, what the prosecutor

8     has indicated as far as the plea agreement with the

9     government, because if they don't have an answer by

10    the end of March, they'll start preparing for trial,

11    so any agreement with them will expire the end of

12    this month.  Do you understand that, sir?

13         MR. ZAMORA:  Okay.

14         THE COURT:  All right.  Do you have any

15    questions, sir?

16         MR. ZAMORA:  Yes, sir.  Well, I was just

17    saying that I have not understood well and that I am

18    pleading guilty to bringing the people and I don't

19    want to go to trial.

20         THE COURT:  All right, I understand,

21    Mr. Zamora, but based on what you're stating I'm

22    going to give you some time.  You can meet with

23    Mr. Britt and make sure you understand everything

24    and he can answer for you any questions you may have

25    and if you still want to plea, we'll make sure it's

1    scheduled before March if you want to plea pursuant

2    to the plea agreement.  Do you understand that, sir?

3          MR. ZAMORA:  Yes, sir.

4          THE COURT:  All right.  Mr. Franco, do you

5    still want to go forward with your plea, sir?

6          MR. FRANCO:  Yes.

7          THE COURT:  All right.  Why don't we just take

8    a brief moment, allow Mr. Zamora to be taken out of

9    the courtroom and Mr. Britt, we appreciate your

10   time, we'll -- just feel free to contact my chambers

11   if you still -- your client still wants to go

12   forward with the plea.

13         MR. BRITT:  Yes, Your Honor.

14         [Brief pause]

15         THE COURT:  Mr. Franco, let me ask you, sir,

16   do you feel you've had a full and fair opportunity

17   to discuss everything with Mr. Brown regarding all

18   the facts and evidence in your case?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Have you discussed with Mr. Brown

21   all your options in the case, to specifically

22   include your option to take the case to trial if you

23   wanted a trial?

24         MR. FRANCO:  No, no.

25         THE COURT:  I understand you don't want a

1        trial, sir.  What I'm asking you though is did you

2        at least discuss that if you wanted to go to trial,

3        you could have a trial in this case?

4                MR. FRANCO:  Yes, but no.

5                THE COURT:  Okay.  All right, sir, let me ask

6        you this.  Are you satisfied with the advice and

7        representation you have received in the case?

8                MR. FRANCO:  Yes.

9                THE COURT:  And has Mr. Brown done everything

10       that you have asked him to do for you in your case?

11               MR. FRANCO:  Yes.

12               THE COURT:  Mr. Brown, for the record was

13       there a plea agreement tendered?

14               MR. BROWN:  We had a plea agreement; we

15       decided not to opt for that, Judge, only because

16       being in front of Judge Covington we prefer to have

17       the opportunity to appeal sentence.

18               THE COURT:  All right.  Thank you.

19               MR. BROWN:  But he is cooperating [inaudible].

20               THE COURT:  All right.  Just to confirm, then,

21       Mr. Franco, you discussed that there was a plea

22       agreement provided to you by the government, but

23       after discussing it with Mr. Brown you have decided

24       not to go forward with the plea agreement; is that

25       correct, sir?

1           MR. FRANCO:  Yes.

2           THE COURT:  I want to ask you, sir, as to your

3   decision to plead guilty in the case, has anyone

4   forced you or threatened you -- or anyone you may

5   know, for that matter -- in order to induce you to

6   plead guilty?

7           MR. FRANCO:  No.

8           THE COURT:  Has anyone promised you anything

9   of value in order to induce you to plead guilty?

10          MR. FRANCO:  No.

11          THE COURT:  Mr. Brown, for the record, are you

12   aware of any promises?

13          MR. BROWN:  No, Your Honor.

14          THE COURT:  Mr. Murray?

15          MR. MURRAY:  No, Your Honor.

16          THE COURT:  Mr. Franco, you understand that,

17   sir, that by pleading guilty, there will be

18   collateral consequences to your plea.  The most

19   relevant consequence to you is that after serving

20   any term of imprisonment, you will be deported back

21   to your home country and denied re-entry as well as

22   citizenship to the United States.  Do you understand

23   that, sir?

24          MR. FRANCO:  Yes.

25          THE COURT:  I need to explain to you the

1    penalties associated with each of the two charges

2    against you.  I'm going to be referring to a

3    document that was filed in your case at document

4    number 64, the document is entitled Notice of

5    Maximum Penalty, Elements of Offense, and

6    Personalization of Elements.

7         The penalties for both Counts One and Two

8    respectively are, first, a mandatory minimum term of

9    imprisonment of 10 years up to a maximum term of

10   imprisonment of life, maximum fine not to exceed

11   $10 million, a term of supervised release of at

12   least five years up to a maximum of life, and a

13   special assessment of $100 which will be due on the

14   date of sentencing and that is as to each count.

15        Having stated that, do you feel you understand

16   the penalties associated with each of the charges

17   against you?

18        MR. FRANCO:  [No response]

19        THE COURT:  Mr. Franco, do you have any

20   questions about those penalties or do you understand

21   what the maximum penalties you face are in this

22   case?

23        MR. FRANCO:  I don't understand what charges.

24        THE COURT:  Okay.  The charges as we

25   discussed -- let me ask you this.  Do you understand

1      what you've been charged with in the case?

2           MR. FRANCO:  I still don't understand what I

3      did, charged.

4           THE COURT:  All right, let's go back to the

5      indictment, sir.  The indictment charges you with a

6      conspiracy, while on board a vessel subject to the

7      jurisdiction of the United States, to possess with

8      intent to distribute 5 kilograms or more of cocaine.

9      So what that means is the government has asserted

10     you have agreed with other individuals to possess at

11     least 5 kilograms of cocaine aboard this vessel

12     subject to the jurisdiction of the United States

13     with the intent that the cocaine be distributed.

14          Additionally, in Count Two you've been charged

15     with what's called a substantive offense.  Rather

16     than conspiring to commit the crime, the government

17     asserts that you did in fact possess 5 kilograms or

18     more of cocaine while aboard a vessel subject to the

19     jurisdiction of the United States and that either

20     you did so yourself or you aided and abetted others

21     to do so.

22          Now, do you understand that, sir, the two

23     charges that we're discussing?

24          MR. FRANCO:  Yes.

25          THE COURT:  Do you have questions about those

1     charges?

2          MR. FRANCO:  Well, we didn't have [inaudible]

3     -- when the Coast Guard stopped us -- but I have to

4     accept the charges and I don't want to trial

5     [inaudible].

6          THE COURT:  All right.  Give me one moment,

7     sir.

8          All right, Mr. Franco, as I understand it, the

9     vessel you were on when you were apprehended by the

10    Coast Guard did not have cocaine on board it; is

11    that correct?

12         MR. FRANCO:  Yes [inaudible].

13         THE COURT:  What the government is asserting

14    is that it would be able to establish that you

15    assisted in the transportation of that cocaine and

16    the movement of the cocaine that was located on a

17    second vessel, that there was observations of

18    cocaine being moved from one vessel to another and

19    that you were one of the individuals who helped move

20    the cocaine.

21         So the theory would be even though the vessel

22    you were on did not possess any cocaine, that under

23    the law you would be responsible for the cocaine

24    located on the other vessel which was approximately

25    440 kilograms of cocaine.  Do you understand that,

1    sir?

2          So in other words, though, Mr. Franco, if you

3    think the government's theory is incorrect and not

4    accurate -- because I will ask you, Mr. Franco, as

5    part of this hearing, did you in fact help transfer

6    at least 5 kilograms of cocaine.  In other words,

7    did you help load the other vessel with the cocaine

8    that was contained on it and did you know that's

9    what you were doing?  If you tell me no, you did not

10   know anything about cocaine, then there is no need

11   to plead guilty because I will not accept your plea.

12         So the question we need to address right now,

13   sir, is were you aware and did you participate in

14   this cocaine transaction to help load one vessel

15   with at least 440 kilograms of cocaine?

16         MR. FRANCO:  I did know [inaudible] that we

17   were bringing it, but I didn't know how many kilos

18   there were.

19         THE COURT:  All right.  So the boat you were

20   on originally contained a quantity of cocaine, sir?

21         MR. FRANCO:  The cocaine we had was the

22   cocaine that was transferred to the other boat.

23         THE COURT:  All right, sir.  Let me ask your

24   attorney something, so give me one moment,

25   Mr. Franco.

1           Mr. Brown, as to the plea, the 5 kilograms or

2      more, is your client prepared to at least admit at

3      least 5 kilograms of cocaine or what's your

4      position?

5           MR. BROWN:  I understand that he was, Judge.

6      It on the first boat, it got transferred to the

7      second boat when the first boat sank, and he was --

8      prior to today he was planning on admitting that

9      there was at least 5 kilograms or more --  he didn't

10     know the exact amount because they were in bales,

11     but --

12          THE COURT:  Sure.  So Mr. Franco, is that

13     correct, sir, did you at least have an understanding

14     that there were at least 5 kilograms of cocaine on

15     board the vessel that was being transferred to the

16     other vessel?

17          MR. FRANCO:  Yes, sir.

18          THE COURT:  All right, sir.  So then going

19     back to your original question, as far as the

20     charges against you, the Count One conspiracy charge

21     for the agreeing with others to possess with intent

22     to distribute 5 kilograms or more of cocaine while

23     aboard a vessel subject to the jurisdiction of the

24     United States, as well as the Count Two substantive

25     charge for possessing with intent to distribute

1    5 kilograms or more of cocaine, do you have any

2    other questions about those charges?

3          MR. FRANCO:  Yes, because I was not headed to

4    the United States.

5          THE COURT:  The charge -- and that's a fair

6    question.  The charge is that you did this activity

7    while aboard a vessel subject to the jurisdiction of

8    the United States, so under the statute the

9    government has asserted jurisdiction over your

10   vessel.  You could challenge that jurisdiction if

11   you think the government inappropriately exercised

12   their jurisdiction over you.  Do you understand

13   that?

14         MR. FRANCO:  Yes, sir.

15         THE COURT:  I'll allow Mr. Brown in a moment,

16   but I can tell you your lawyer has done a number of

17   these types of cases and I'm sure he's looked at

18   that issue and if you would like to take a moment to

19   discuss that with him right now, I will give you all

20   that time you need.

21         MR. FRANCO:  I'm ready.

22         MR. BROWN:  Judge, we've gone over all of --

23   there are some concepts that are fundamentally

24   difficult I think for him to comprehend.  Not that

25   he hasn't heard this, but the understanding that

1    there is such a thing as jurisdiction, there is such

2    a thing as international water that you can have

3    jurisdiction, as many times as we've gone over that,

4    I think that's just a difficult concept.  And then

5    when the court talks about participating with

6    others, that's another concept that's difficult.  He

7    knows he was paid to do this, but that there were

8    the others involved, that he's a participant, terms

9    like that I think are difficult for him to

10   comprehend.

11            THE COURT:  Thank you, Mr. Brown.  Understand.

12            Mr. Franco, is that accurate, what Mr. Brown

13   just stated?

14            MR. FRANCO:  Yes.

15            THE COURT:  Mr. Franco, what's important for

16   you to understand, the purpose of this hearing is so

17   that you're comfortable in your decision to plead

18   guilty; in other words, that you're doing so

19   voluntarily and knowingly.  Knowingly means that you

20   understand what you're faced with before you make

21   the decision to plead guilty.

22            As Mr. Brown stated, and I certainly

23   appreciate, it's difficult to understand the concept

24   of how the United States is exercising jurisdiction

25   over you.  The question, though, that you must let

1      me know is do you want to go forward with your plea,

2      do you want to plead guilty in this case?

3              MR. FRANCO:  Can I ask my attorney a question?

4              THE COURT:  Absolutely.

5              [ Brief pause]

6              THE COURT:  Mr. Franco, I just want to

7      confirm, Mr. Brown has just told me as well that you

8      do not want to go to trial, but you do want to enter

9      a plea of guilt.  Is that correct, sir?

10             MR. FRANCO:  Yes, sir.

11             THE COURT:  And what I was explaining to you

12     just a moment ago that's important for you to

13     understand is that if you do enter a plea of guilt

14     or if you're convicted of this crime, I should say,

15     there are penalties that you could face and so what

16     I was explaining to you are those potential

17     penalties.  These are what are known as potential

18     maximum penalties, but not the absolute penalties

19     you will receive, but the potential that you could

20     receive.  Do you understand that, sir?

21             MR. FRANCO:  Yes, sir.

22             THE COURT:  The penalties that I described to

23     you, do you have any questions about those

24     penalties?

25             MR. FRANCO:  Yes.

1            THE COURT:  Sure.  Let me explain them one

2       more time.  So for both Count One and Count Two, the

3       penalties include a term of imprisonment of 10 years

4       up to a maximum term of imprisonment of life, a

5       maximum fine not exceed $10 million, a term of

6       supervised release of at least five years, an a

7       special assessment of $100.

8            So focusing on the term of imprisonment, what

9       that tells you, there is the potential to receive a

10      mandatory 10 years up to the potential of life

11      imprisonment.  Do you understand that, sir?

12           MR. FRANCO:  Yes, sir.

13           THE COURT:  All right.  Let me explain to you

14      what a term of supervised release is.  Now, this is

15      going to be difficult because as I told you a moment

16      ago, you will be deported from the United States

17      after you are released from prison.  So really it

18      only pertains to one aspect to you because you will

19      be placed on a term of supervision after you are

20      released from jail and that the court will place

21      upon you conditions on your liberties.  And if you

22      violate the court's conditions in any way, the court

23      after conducting a hearing could order you back to

24      jail for an additional period of time.

25           So since you are to be deported after serving

1    your term of imprisonment, you could fully expect

2    that a condition of your supervision is going to be

3    that you not re-enter the United States without the

4    appropriate approval.  So really what this means is

5    if you come back to the United States while on this

6    period of supervision, the court after conducting a

7    hearing could order you back to jail for an

8    additional period of time.

9         Mr. Franco, I recognize that may seem strange

10   to you because I also recognize that you certainly

11   would prefer to go home right now if you could and

12   you are going to prefer to go home after your term

13   of imprisonment.  But nonetheless you need to

14   understand that is a potential consequence of your

15   violation of supervised release.  Do you understand

16   that, sir?

17        MR. FRANCO:  Yes, sir.

18        THE COURT:  Let me also explain to you that

19   whatever term of imprisonment you receive, you are

20   going to serve all that time incarcerated and not be

21   released on what we call parole.  Do you understand

22   that?

23        MR. FRANCO:  Yes.

24        THE COURT:  What I'm trying to explain to you,

25   sir, is whatever you get for a sentence, as far as

1    the term of imprisonment, you just simply need to

2    understand that you're going to serve all that time

3    incarcerated.  Do you understand that?

4           MR. FRANCO:  Yes, sir.

5           THE COURT:  And Mr. Murray, for the record,

6    I'm assuming there is no applicable restitution or

7    forfeiture?

8           MR. MURRAY:  That is correct, Your Honor.

9           THE COURT:  Mr. Franco, have you discussed

10   what we call the United States Sentencing

11   Guidelines?  Have you discussed those with

12   Mr. Brown?  I'll hold up for you a chart, hopefully

13   you can see it, sir, it's called the sentencing

14   table.  Mr. Franco, did you look at something like

15   that with Mr. Brown?

16          MR. FRANCO:  Yes.

17          THE COURT:  All right, sir.  It's fully

18   anticipated you would do that, Mr. Franco.  But what

19   I need to explain to you is that you need to

20   understand no one could tell you with any certainty

21   what your advisory guideline range will be, that is

22   where on that chart your case may wind up.  No one

23   could do that with any certainty and that includes

24   Mr. Brown.  One reason why that is is because the

25   United States Probation Office will prepare a

1	document called a pre-sentence investigative report.

2	This report is important to you because the court is

3	going to use it as an aid to determine your

4	sentence.  You will have the opportunity to review

5	this report in consultation with Mr. Brown prior to

6	the sentencing and you will be allowed to make any

7	objections to the report that you think necessary.

8	If the objections are unresolved prior to your

9	sentencing hearing, then Judge Covington will

10	resolve those objection at your sentencing hearing.

11	I tell you this just to emphasize for you,

12	again, sir, that no one could tell you with any

13	certainty what your advisory guideline range will

14	be.  And really what that means is if you've

15	attempted to estimate, after consulting with

16	Mr. Brown, a guideline range for your case, again

17	where you may fall on that chart, you need to

18	understand your estimation could be wrong and if it

19	is wrong, you cannot later complain and ask to

20	withdraw from your plea of guilty.  Do you

21	understand that?

22	MR. FRANCO:  Yes, sir.

23	THE COURT:  I must also explain to you that

24	the United States Sentencing Guidelines are not

25	binding on the court; that is, they are only

1    advisory.  So once the court has determined that the

2    guideline range on the chart, the court in some

3    circumstances could vary or depart upward from that

4    range, or in other circumstances vary and depart

5    below the range.  Do you understand that?

6        MR. FRANCO:  Yes.

7        THE COURT:  Mr. Franco, it's very important

8    you understand that you have a number of valuable

9    constitutional rights and by entering a plea of

10   guilty, you're giving up those rights.  Those rights

11   include your right to persist in a plea of not

12   guilty and take the case to trial.  At the trial it

13   would be the government who would always bear the

14   burden of proof to establish your guilt as charged

15   beyond a reasonable doubt.

16       At the trial you'd be presumed innocent and

17   you would never be required to prove anything.  At

18   the trial you would have a jury of 12 persons who

19   would be selected at random and who could not find

20   you guilty unless each and every member of the jury

21   unanimously agreed beyond a reasonable doubt that

22   you had committed each of the essential elements of

23   the charged offense.

24       As you know, you have the right to effective

25   assistance of counsel at all stages in the case and

1    if you cannot afford to hire a lawyer, the court

2    would appoint one to you at no cost to you to

3    represent you throughout the entirety of the case.

4        Now, at the trial you would have a right to

5    hear and see all the witnesses called by the

6    government against you and the right to confront and

7    cross-examine those witnesses in your defense.

8    Additionally, you would have the right to challenge

9    any evidence the government sought to use against

10   you.

11       Now, as I stated, at the trial you would not

12   be required to prove anything, but if you decided to

13   do so, you would have the right to present a defense

14   on your own behalf; that is, to call any witnesses

15   you thought necessary or present any evidence you

16   thought important.  If your witnesses would not come

17   to the court voluntarily or if you could not afford

18   to pay for your witnesses, you would have the right

19   to have the court to order those witnesses to come

20   testify for you at no cost to you.

21       Additionally, if you decided to do so, you

22   would have the right to testify in your own defense.

23   But again, to be clear, as I've stated you would not

24   be required to prove anything at the trial.  So if

25   you decided not to present a defense, the jury would

1    be specifically instructed that it could not draw

2    any unfavorable conclusion from your silence.

3         Having stated that, do you understand that by

4    pleading guilty in this case, you're giving up all

5    these valuable constitutional rights as I've just

6    described them?

7         MR. FRANCO:  [No response]

8         THE COURT:  Do you understand that,

9    Mr. Franco?

10        MR. FRANCO:  Yes, sir.

11        THE COURT:  All right, sir, I'm going to

12   explain to you the essential elements of both Counts

13   One and Two.  In other words, this is what the

14   government would have to prove at the trial in order

15   to establish your guilt.  Those elements include,

16   for Count One, first, that two or more persons in

17   some way or manner came to a mutual understanding to

18   try to accomplish a common and unlawful plan.  The

19   plan in your case, the plan to possess with intent

20   to distribute cocaine on board a vessel subject to

21   the jurisdiction of the United States.  And you,

22   knowing the unlawful purpose of the plan, willfully

23   joined in it.

24        The elements for Count Two against you are,

25   first, that you, aided and abetted by your

1    codefendants, knowingly and willfully possessed

2    cocaine as charged; and second, that you, aided and

3    abetted by your codefendants, possessed the cocaine

4    with intent to distribute it.

5         This is what the government would have to

6    prove as to each of the charges to establish your

7    guilt.  Do you understand that?

8         MR. FRANCO:  Yes, sir.

9         THE COURT:  In a moment I'm going to have the

10   prosecutor tell me the facts in support of each of

11   those elements.  You need to listen carefully to

12   these facts because I will ask you if you have any

13   disagreement and whether they are true.

14        All right.  Mr. Murray?

15        MR. MURRAY:  Your Honor, were this case to

16   proceed to trial, the United States would prove the

17   following facts and others beyond a reasonable

18   doubt.

19        In September 2014, the defendant and his six

20   codefendants were knowing and willing participants

21   in a multistage, multivessel maritime cocaine

22   smuggling venture.  The illegal venture involved the

23   smuggling of approximately 440 kilograms of cocaine

24   using multiple small vessels known as Pangas.

25        On September 11, 2014, the crew of a United

1        States Maritime Patrol Aircraft -- or MPA --

2        detected three Pangas, two of which were later

3        identified as Yeny Arg and La Golosa, approximately

4        140 nautical miles southwest of the Guatemalan -

5        El Salvador border on the high seas and in

6        international waters.

7               The MPA crew observed that one Panga had

8        packages of cocaine on deck and was near an

9        abandoned Panga.  The MPA crew observed two of the

10       Pangas meet and transfer people and packages

11       containing cocaine.

12              Later on September 11th Coast Guard Cutter

13       Alert's boarding team stopped and boarded the Yeny

14       Arg.  Alert's boarding team found four of the

15       defendants on board:  Hector Castillo, Giezi Magno

16       Zamora, Jhonny Enrique Arcentales Mero, and Carlos

17       Franco.  The master of the vessel claimed Guatemalan

18       nationality for Yeny Arg.

19              The government of Guatemala consented to a

20       boarding and ultimately to the exercise of

21       jurisdiction over the vessel by the United States.

22       There was no contraband on board the Yeny Arg.

23              Meanwhile Coast Guard Cutter Boutwell's

24       helicopter pursued La Golosa.  The helicopter crew

25       observed persons embarked on La Golosa jettisoning

1    packages containing cocaine.  Boutwell's crew

2    ultimately recovered eight bales containing a total

3    of approximately 440 kilograms of cocaine.  The

4    helicopter crew stopped La Golosa with disabling

5    fire.

6         Boutwell's boarding team found three of the

7    defendants embarked in La Golosa:  Ernesto Estrada,

8    Fabian Estrada, and Jair Guevara Payan.  The master

9    of the vessel claimed Guatemalan nationality for La

10   Golosa.  The government of Guatemala consented to a

11   boarding and ultimately to the exercise of

12   jurisdiction over the vessel by the United States.

13        The seven defendants were subsequently flown

14   to the United States, first arriving at a place in

15   the Middle District of Florida.

16        THE COURT:  Thank you, Mr. Murray.

17        Mr. Franco, did you hear the facts as stated

18   by the prosecutor?

19        MR. FRANCO:  Yes, sir.

20        THE COURT:  Do you have any disagreement with

21   any of those facts?

22        MR. FRANCO:  No.

23        THE COURT:  Are those facts true?

24        MR. FRANCO:  Yes, Your Honor.

25        THE COURT:  Mr. Franco, it's important you

1    understand that it does not matter to the court in

2    any way whether you decide to enter a plea of guilty

3    or decide to take your case to trial.  That

4    important decision is for you and you alone.  Having

5    stated that, do you feel you are prepared to make

6    that decision today?

7           MR. FRANCO:  Yes, Your Honor.

8           THE COURT:  All right, sir, please rise.

9    Mr. Franco, how do you plead to Count One of the

10   indictment which charges you with the conspiracy to

11   possess with intent to distribute 5 kilograms or

12   more of cocaine while aboard a vessel subject to the

13   jurisdiction of the United States in violation of

14   Title 46, United States Code, Sections 7503(a) and

15   7506(a) and (b), guilty or not guilty?

16           MR. FRANCO:  Guilty.

17           THE COURT:  And how do you plead to Count Two

18   of the indictment which charges you with possessing

19   with intent to distribute, or aiding and abetting

20   others to do so, of five or more kilograms of

21   cocaine while on board a vessel subject to the

22   jurisdiction of the United States, in violation of

23   Title 46, United States Code, Sections 7503(a) and

24   7506(a), guilty or not guilty?

25           MR. FRANCO:  Guilty.

1          THE COURT:  Are you pleading guilty to each of

2     these charges because you're in fact guilty of these

3     crimes?

4          MR. FRANCO:  Yes, I am guilty.

5          THE COURT:  Thank you, sir, you may be seated.

6     All right, Mr. Brown, is there anything you want on

7     the record?

8          MR. BROWN:  No, Your Honor.

9          THE COURT:  Mr. Murray, anything you need on

10    the record?

11         MR. MURRAY:  No, Your Honor.

12         THE COURT:  Mr. Franco, before I conclude, I

13    want to ask you, sir, do you have any questions at

14    all about anything that we have discussed or for

15    that matter anything that I did not cover?

16         MR. FRANCO:  No, sir.

17         THE COURT:  All right.  I want to note for the

18    record based upon my discussions with Mr. Franco, my

19    review of the indictment and the factual basis as

20    provided by the government, I'm fully satisfied that

21    Mr. Franco is competent to enter a plea of guilty,

22    his plea is being entered knowingly, intelligently,

23    and voluntarily, and it is supported by an

24    independent factual basis for each of the essential

25    elements of Counts One and Two of the indictment.

1          Mr. Franco, I'm going to issue a report then

2     recommending your plea be accepted.  You have

3     14 days to object to the report.  If you do not

4     object to the report, your plea will be accepted and

5     the case will be scheduled for sentencing.

6     Sentencing typically takes place between 70 and

7     90 days from the date of your plea.

8          During the interim the probation office is

9     going to want to conduct an interview with you.

10    It's your decision whether to participate in the

11    interview.  If you do decide to participate in the

12    interview, you could have Mr. Brown present with you

13    for the interview.  Do you understand that?

14          MR. FRANCO:  Yes, sir.

15          THE COURT:  All right.  Anything else?

16          MR. MURRAY:  No, Your Honor.

17          THE COURT:  Mr. Brown, anything else?

18          MR. BROWN:  No.

19          THE COURT:  Thank you.  We'll be in recess.

20          (The proceedings adjourned at 3:38 p.m.)

21

22

23

24

25

1                    C E R T I F I C A T E

2

3    STATE OF FLORIDA              )

4    COUNTY OF HILLSBOROUGH   )

5        I, Lynann Nicely, RMR, CRR, Official Court

6    Reporter for the United States District Court, Middle

7    District, Tampa Division,

8        DO HEREBY CERTIFY, that I was authorized to and

9    did, through use of Computer Aided Transcription,

10   report in machine shorthand the proceedings and

11   evidence in the above-styled cause, as stated in the

12   caption hereto, and that the foregoing pages,

13   numbered 1 through 38, inclusive, constitute a true

14   and correct transcription of my machine shorthand

15   report of said proceedings and evidence.

16       IN WITNESS WHEREOF, I have hereunto set my hand in

17   the City of Tampa, County of Hillsborough, State of

18   Florida, March 24, 2016.

19

20

21          _/s/ Lynann Nicely_____
                 Lynann Nicely, RMR, CRR,
22               Official Court Reporter

23

24

25